Case number 191924. It's an appeal from a dismissal under Rule 12c in a judgment from the District of Delaware. This is an appeal from a dismissal under Rule 12c in a judgment from the District of Delaware. Okay, Mr. Brown, you want four minutes for rebuttal? That's correct, Your Honor. Okay. Okay, you may begin. Let me ask a question first. Go ahead. There's lots of stuff you don't want us to say in open court, which seems a little crazy since it's laid out. There are only so many things that could constitute the alternative solvents and they're laid out on the face of the patent, which is a public document. So, is it really necessary for us to use things that will trip our tongues like Slayback's secondary solvent or something? None of those are our issue, Your Honor. These are all Slayback's issue, so I'll let Slayback counsel answer. We're pleased to know that we're okay with your using the actual word. Okay, great. Because we were all saying, how are we going to avoid saying this? Because we've been saying it to our law clerks for weeks as we talk about this. Okay. Was that what you were going to say? Yes. Great minds think alike. Okay, go ahead. May it please the Court, I want to delve into the central error in the district court decision here. And the district court concluded that when the specification in this patent describes something as a pharmaceutically acceptable fluid or solvent, for one purpose, that that component is disclosed as a pharmaceutically acceptable fluid for every purpose within the patent. And I want to focus in particular on three concrete examples that we would submit refute that interpretation of this patent specification. First is example one. Within example one, ethanol is tested both with a stabilizing amount of a chloride salt and without. And without, it is described as it says it would not be suitable. Is there anything, I mean, is there anything that, in the record, that shows that it would not be suitable in the claimed formulation? No. With respect to the claimed category, there is no, the specification is entirely silent on the use of ethanol within the claimed formulation. Okay. So your argument is, well, ethanol is better with the salt formulation, but I don't see anything that says that in any other formulation you couldn't use it. Well, there actually is. Because in example one, and that's what I'm getting to. In example one, where they test it without the stabilizing amount of chloride salt, they say it's not suitable. If you skip to example two, they test DMSO, also a pharmaceutically acceptable fluid. They test it without stabilizing amount of chloride salt, also without an antioxidant. It's tested as a single solvent. It does work. And so you would conclude on the face of that, example one versus example two. DMSO is its own embodiment in this specification, right? The DMSO separately disclosed embodiment doesn't talk about using some pharmaceutical acceptable fluid in addition to the DMSO. No. DMSO is the pharmaceutically acceptable fluid. So you wouldn't be wondering about whether to combine DMSO with any other solvent, whether it's ethanol or something else. Correct. But the way the district court here transported ethanol from its textual disclosure in the, what I'll call the category B formulations in the specification, to the category A formulations is he latched onto the term pharmaceutically acceptable fluid, which he labeled the solvent limitation. And he said since it's disclosed as a pharmaceutically acceptable fluid, that means it's disclosed as an alternative to PG in the category A formulations. But if that were true, then you could take ethanol and transport it because it's also a pharmaceutically acceptable fluid, as is DMSO. You could transport it to the category three formulations. But the patent tells you you can't. And what the specification- I'm getting lost when you talk about formulation A, formulation B, category three. Can you just use antioxidant, short salt, DMSO? Correct. So when the patent specification tells you, in its discussion of the chloride salt embodiments, that ethanol by itself, benzyl alcohol by themselves, without the chloride salt present, they are not suitable for the invention. DMSO without the chloride salt present, without an antioxidant present, is suitable. It works. And so you can't conclude by the label, pharmaceutically acceptable fluid, that something is an alternative. If it's described in one category, the chloride salt category, you can't conclude just because of the label, pharmaceutically acceptable fluid, that label does not translate into a disclosure for all purposes where you see the word pharmaceutically acceptable fluid. There's some mental gymnastics that it seems you're going to have to jump through. Because we know it works, right? It ultimately works. Yes. And you concede that there's nothing in the patent itself that says it definitely won't work. Correct. Right? And then you're going to try to say under DOE that it's just a simple substitution. So if it's such a simple substitution, and we know it worked, why isn't the district court correct that you ultimately disclosed all the pieces and parts? I think the requisite case there is the Sandisk case. So under the Sandisk case, the court very clearly said that the issue and the requirement is actual disclosure. It's not enough that a skilled artisan could read it and determine that it could or couldn't be used. The requirement is actual disclosure as an alternative. It's not required that there be some magical language or specific language. But the issue is, does a skilled artisan reading this find that something is disclosed as an alternative to the claim limitation at issue in the claim invention? And so I think Sandisk clearly answers that issue. And I would point out that all of these claims have a stability limitation. And so the idea that there's this interchangeable solvent limitation... So why would someone skilled in the art not find it disclosed that ethanol is an alternative to the other solvents? So what I think is particularly telling on that part, there are two things. First of all, on column four, line 45 to 46 of the patent at appendix page 45, that's where the first discussion of the chloride salt embodiment is. And there it specifically states that preferred pharmaceutically acceptable fluids include PEG and ethanol. What line are you at? Lines 45 to 46. And it says PEG and ethanol are preferred in this embodiment of the invention. So it textually limits that disclosure to that particular embodiment of the invention that it's disclosing. So you have to jump from that to say, well, that really means in all embodiments of the invention. The second textual limitation that I would point to, Your Honors, is at columns five and six. And in our reply brief, in the grade brief at page 12, we repeat this section. It appears three times. And all three times, the specification describes the pharmaceutically acceptable fluid as, quote, containing one of the following. And A, this is where my A, B, and C was coming from, Your Honor. A is PEG, PG, or mixtures thereof, and a stabilizing amount of an antioxidant. B, one or more of PG, ethanol, PEG, glycopherol, and benzyl alcohol, and a stabilizing amount of chloride salt or DMSO. And the language here is important. The intro, the introductory language doesn't say one or more. It doesn't have the open-ended language that you've seen in the cases where this Court has found dedication disclosure, where something is for the purposes of this invention. It says it includes one of the following. It uses one or more within the text of the Category B, the stabilizing salt formulation. Let me ask you a hypothetical. What if the patent is directed to jackets? Okay. And then the disclosure says I have my first embodiment for a jacket, and it requires a fastener. And the fastener can be a zipper or it can be buttons. I've got another jacket, though, embodiment number two, a completely different embodiment. It also has a fastener, and the fastener can be any one of a zipper, buttons, or Velcro. Are you saying that because of the way I separated out those two embodiments and used coded language about this is for purposes of this embodiment and this is for purposes of that embodiment, one of the skill in the jacket art wouldn't understand the disclosure as equating Velcro and zippers and buttons as being interchangeable and alternatives for each other? That's exactly the question you are. If one of skill would understand that as disclosing that as an alternative to Velcro. Well, I guess my point is I'm listening to you, and you're saying, well, embodiment one says for purposes of this embodiment and embodiment two for purposes of that embodiment. But I'm not sure if that phrase is good enough to really drive a wedge between ethanol and PG as alternative solvents, at least in the context here when there's really nothing in the patent specification that indicates any kind of chemical sensitivity with respect to the solvents you might use with an antioxidant as opposed to solvents that you might use for a chloride salt. And then at the same time, I didn't see you try to amend your complaint to include any such allegations of how one of skill reading this reference would recognize at the time of this invention there was some great sensitivity with antioxidants that you wouldn't want to use ethanol, maybe ever, as a solvent in combination with an antioxidant. So we were never given the opportunity to amend our complaint. Did you try? Well, the motion to dismiss was granted. That ends the matter and makes it right for appeal. But when the motion to dismiss was filed, did you ask to amend the complaint? We did not. We believed we plausibly pled infringement under the Doctrine of Equivalence, and especially under this Court's decision in NALCO. And we think this patent is replete with the fact that the formulations are sensitive to the solvents present. That's why I was starting with the example one where two of us— And I guess for me, getting back to Judge O'Malley's earlier question, it would maybe be difficult for you to try to amend your complaint to say that one reading this reference would understand there's some kind of special chemical sensitivity of using an ethanol with an antioxidant because, after all, that's the very basis of your Doctrine of Equivalence claim, that it would be totally insubstantial to replace PG with ethanol. That's the case in every dedication disclosure argument. You're saying something that works was not disclosed in your specification. We think, as a factual matter, we believe that we can show under this Court's factual requirements for equivalence, we think we can show equivalence at the District Court. But at best, you're arguing that the specification says that certain combinations work better than other combinations. But you conceded earlier that there's nothing in the spec that says they won't work if the combinations are jumbled in a different way. Except the fact that the DMSO category will not work with ethanol, with benzoyl alcohol, or with PEG. So three of the components are tested without the antioxidant and without the chloride salt, and they were found unsuitable. DMSO was not. And so that does tell you there is a sensitivity, and the declaration we submitted at the District Court clearly laid out that different mechanisms would be understood to be at work in the Category A formulation. The chloride salts would be addressing hydrolysis. There's nothing in that declaration, again, that said it wouldn't work. It just said you'd kind of like to use chloride salt with ethanol because of the water properties. But it doesn't say that that's the only option. Correct, but the Sandisk case makes very clear, Your Honor, we don't have to show it wouldn't work. It could be very clear to a skilled artisan that it would work if we don't actually disclose it as an alternative. That's the standard. Your argument, you don't disclose it as an alternative because it's disclosed in a different embodiment. In a different embodiment, but we think… But that's not our law, is it? That's not what we say in Johnson. In Johnson, there was a global statement that there was a substrate, and there was a global statement that it was preferred to be aluminum. It could also be steel. That applied globally. Here we have a difference. The disclosure of ethanol is specific to the chloride salt formulation textually in every instance. What I think is very important here is in Examples 3 through 8, I counted 10 different concrete formulations that use PEG, PG, and a stabilizing amount of an antioxidant. Those are what I believe this court's precedent means by a completed embodiment that isn't required under Johnson & Johnson overruling the YBM Magnex case. But here, if we had said globally anywhere, ethanol can be used as a pharmaceutically acceptable fluid in this invention, then we would fall within Johnson & Johnson. We didn't. We textually limited it to this particular category that a skilled artisan would understand is functioning by a particular… What about Mike Jackett's hypothetical? I mean, to me, I would look at that and say, yeah, this disclosure equates or renders interchangeable Velcro zippers and buttons. But I think the mechanical context here versus a claim that has a particularized stability limitation, which was the point of this patent. And they tested certain things and they found you got the stability. They tested certain things and said you didn't get the stability. And other things they didn't test it, they were silent on. And so here we're addressing something they were silent on. And that, we think, is right down the middle of what is fair under Johnson & Johnson, particularly as it resolved the Graver Tank issue, and fair under this court's precedent. And it's what the Doctrine of Equivalence is made for. We're out of time. I'll restore two minutes for rebuttal. Good morning, Your Honors. I want to pick up with some of the points that Your Honors raised with the appellant. I think the problem with the position that they're taking here is that, on the one hand, they say, and they concede in their brief, that the Dedication Disclosure Doctrine applies to disclosures of claim limitations. You don't need a whole embodiment, and I agree that's the law. On the other hand, they take the position that because the patent never says you can use this list of acceptable solvents for the pharmaceutically acceptable fluid in conjunction with an antioxidant, that, therefore, it's not disclosed. And I think that there's a fundamental inconsistency between that, because effectively, if you follow the logic of their position, they're basically saying you have to disclose the entire embodiment consisting of bendamustine and ethanol in conjunction with an antioxidant. And I think that that is not the law. And certainly the district court found that it was not the law. Admittedly, I'm a process freak. But, I mean, to do this on a 12C, even I kept saying, I just wish I had a little more. I wish I had a little more information. Even the declaration that the district court wouldn't consider would have been something that I wish we could weigh in the balance. Or could I have had some prosecution history discussion of any of this? The problem is the district court really jumped quickly to this. Why shouldn't we say this is just not something you should do on a 12C? Because, Your Honor, there's plenty of precedent for deciding issues like dedication disclosure and prosecution history estoppel in a 12B context. I mean, there are a number of courts, many courts, most cases are cited in a brief that have done that. I don't disagree that it would probably benefit you to have additional evidence in the record, but the fact of the matter is the district court found that he had sufficient context to decide the issue because he had the prosecution history in front of him and he had the relevant portions of the NDA in front of him as well as the patents and their disclosure. And in this case, it didn't really require rocket science because the patent states on its face that acceptable solvents for this pharmaceutically acceptable fluid, which is a common element of all of the embodiments and patents. Wasn't there also an expert opinion available to the court? If you're referring to Dr. Amici's declaration? The district court did not consider Dr. Amici's declaration because... Why not if it had it before? Well, among other things, because the EGLE, the appellant, told the court that it would be improper to consider expert testimony at the 12C stage of proceedings, so the court took the right to work. Right. That's what I don't understand. Why not just convert it into a motion for summary judgment and say, I'll consider expert testimony? Well, Your Honor, the court certainly could have done that, but I don't believe it was required. And even if it had considered Dr. Amici's declaration, Dr. Amici doesn't address the critical issue, which is, is there any reason why a person of ordinary skill and regard would think that ethanol would not work with an antioxidant? Did EGLE argue that this should be converted into a summary judgment decision or proceeding? I'm sorry, I missed the first part of your question. Did EGLE argue that they should convert the 12B6 proceeding into a summary judgment? Not that I recall, Your Honor, but I don't have perfect recollection. But my recollection is that the argument was that the court, that there were fact questions which precluded a ruling under 12C. The basis for that was the Amici declaration. But at the same time, they said it's not proper to consider expert testimony in the context of a rule 12C motion. And again, the Amici declaration doesn't really address the question of whether within the limitation of pharmaceutically acceptable fluid, which was the issue before the district court, whether there was anything in the patent that would suggest to a person of ordinary skill that ethanol wouldn't work with an antioxidant. And there's a couple of things that, in the patent, that I think are worth noting. For one thing, if you look at the purpose, I mean the pharmaceutically acceptable fluid is defined in the patent. It's basically defined as something that, you know, is safe for human use. But the patent also talks about the function of the pharmaceutically acceptable fluid. And the only thing that it says about that is that it's a solvent for bendamustine. And if you look at the examples, they talk about, in all of the examples, dissolving bendamustine in the pharmaceutically acceptable fluid. So if ethanol dissolves bendamustine in one embodiment, it doesn't really require expert testimony to say, well, it's going to dissolve bendamustine in all of the embodiments, because that's what it's doing. So is it your position that this solvent limitation, as you describe it, as the judge described it, applies to all embodiments? I believe that the courts decided that, but there's only one embodiment in the patent, so he didn't address that issue per se. But what he said was the patent discloses a list of alternatives for the ethanol, which is what is used in our product. What do we do about the DMSO? Well, the DMSO I think is a little bit of a red herring, because the DMSO doesn't require an antioxidant or chloride salts to work, but there's nothing in the patent to indicate that it wouldn't work in the presence of an antioxidant or chloride salts. There's also, if you look at the examples three and four, which are the antioxidant examples, it says, the language of the patent says, so he says, this I'm reading from column, this is column eight of the 831 patent, which is appendix 38, but it says, as shown in table four, bendamustine when dissolved in a pharmaceutically acceptable fluid, such as a combination of polyethylene glycol and polypropylene glycol, and it goes on. But the language I want to focus on is the such as. I mean, clearly inventors envision the possibility that other solvents would be used with antioxidants, and that the other solvents that are disclosed as being suitable for this invention are those listed in, you know, that we've talked about, which include ethanol as well as PEG, I think, furanol and butyl alcohol or isobutyl alcohol. So. What is your view as to the applicability of Johnson in this case? You heard your opponents say, distinguish it, but what do you say to that? I don't, I think Johnson is directly on point. I mean, Johnson makes it very clear that you don't have to have, you know, one from column A, one from column B, one from column C all disclosed together in order for there to be a dedication disclosure. It's sufficient if, if, if there is a disclosure of alternatives to any limitation of the claim, so long as a person of ordinary skill in the art would recognize that this is an alternative to that limitation. In this case, the patent says almost in adverba, these are alternative solvents for use in the pharmaceutically acceptable fluid. The only argument that Eagle makes is that because those statements are made in the context of the embodiments that include chloride salts, that therefore they wouldn't apply to the other, you know, their posts that wouldn't understand them to apply to the other embodiments that are discussed in the patents, including the antioxidant embodiment. And again, there's nothing in the patents to indicate that ethanol would not be suitable in those embodiments. It's true that the inventors didn't test that, but there's nothing in the patent to indicate that it wouldn't work. And as I mentioned, you know, there is language in the patents that in examples three and four, that pretty clearly suggests that the inventors envisioned that other solvents would work. I mean, the other thing to bear in mind here is that we are talking about the minor component of the pharmaceutically acceptable fluid as it's laid out in the claims. The claims have a limitation. I think PEG has to be roughly, you know, 90% of the, of the solvent and the remaining five to 10% in the claim is PG. So we're talking about substituting ethanol for PG as the minor component of the pharmaceutically acceptable fluid. And, you know, so the question the judge decided is whether or not the specification made clear to a person of ordinary skill in the art that ethanol could be used as an alternative to PG. And that's exactly what the patent says. I think in answer to your question, Judge O'Malley, that's why the judge didn't feel he needed expert testimony. And again, the expert testimony that they put in really wouldn't have helped him because what it talks about, the two points I want to make, what it talks about is the mechanism of action for the chloride ions. It doesn't discuss the mechanism of action for an antioxidant. And again, these are completely different elements. So it's not talking about what is the mechanism of action for the pharmaceutically acceptable fluid. It's talking about how do the chloride salts prevent degradation. And with respect to antioxidants, all it says is a person of ordinary skill would recognize that antioxidants don't have a chlorine ion. So there may be a different mechanism. It doesn't even definitively say that the mechanism is different or what that would be. But the, even the point here, how it might relate to ethanol. It doesn't. I mean, the point that that's what I'm saying is that the, the declaration that they put in really doesn't relate to the issue in the case, which is whether or not a person of ordinary skill in the art would recognize ethanol as an alternative to PG in, in the, in the claim, which requires the antioxidant. I mean, recognizing that the trial judge is not one of ordinary skill in the art. I mean, we have to accept the proposition that what he's saying is that anybody would recognize this. Yeah. I think he's saying that the plain English words and the patent make it clear that these are disclosed as alternative, alternative fluids for use in the pharmaceutically acceptable fluid limitation. And I don't think he felt that he needed expert testimony and I don't think he did need it. I think this is a situation that in my mind is, is very similar to the Indivior case that this court decided in Indivior. You know, the, the issue was I think the claim limitation was for a saccharide and the saccharide to prevent hydrolysis. The, the, the claim required a saccharide. Maybe I'm getting myself mixed up here, but the claim required a I'm sorry, I am getting myself mixed up. Indivior was a film forming agent and the claim required a specific film forming agent. The, the specification disclosed that something else was, was also usable as a film forming agent. And the argument was made that because the claim also required another element that had to be present in the form of mixed molecular weight, I think it was polyethylene oxides that, and the patent never said, well, you can use this other film forming agent with a mixture of high and low molecular weight, PEOs that therefore there's no dedication disclosure. And this court found that there was dedication disclosure. It's the same kind of argument that they're making here. They're saying, well, it's only disclosed in reference to the embodiments with chloride salts. It's not disclosed in reference to the embodiment with antioxidant. Therefore it doesn't count. And I think if you look at the Indivior opinion that, that of all the cases that are discussed in both parties brief, I think is most factually opposite to this situation. Your Honor, I just want to say very briefly, a couple of words. They have a couple of other arguments in their brief. And one of them, as we argue in our brief, we think they waived because they didn't raise it below. That's the argument that says that the disclosure of ethanol is too generic to place an ordinary, a person of ordinary skill on notice that, that the particular absolute ethanol in our product was, was dedicated to the public. We do not believe this argument was raised below. We, I would invite you to look at the references to their brief below where they say they raised the issue. I don't think they did. In any event on the merits, I think it's almost silly to argue that the disclosure of ethanol, which is a specific chemical moiety that probably any high school chemistry student could draw is a generic disclosure. And if you look at, you know, the cases, the cases that have found dedication disclosure, I don't, I don't see any argument that ethanol is generic here on the merits. So lastly, your honor, I just want to address briefly their argument that there were undecided fact questions below that, that precluded or that should have precluded the judge from, from granting the motion to dismiss. I've mentioned some of the things that, you know, that I think make it clear that there were no disputed factual issues with respect to the actual deciding factor in this case, which is whether or not there was disclosure of an alternative for the pharmaceutically acceptable fluid limitation. A couple of other things that I would mention, at various points in their brief, they talk about how these work in different ways, is one of the ways they say it, by different mechanisms fundamentally differ from the formulations. There is no evidence of that. There is no evidence in the specification to indicate that these embodiments are, that there's any preference for one embodiment versus the other. There's no instruction on when you would pick one versus the other. There's nothing to indicate that there's really anything different. They're all means of getting to the same end, which is a storage stable Vendamostine solution. So I don't, there's nothing in the, certainly nothing in the specification that would place anybody on notice that there's any distinction between these embodiments, other than that they are different embodiments, which is true, you know, in most patents. The other thing I want to note is, and I think Judge O'Malley, you alluded to this, that there's, I think, a fundamental inconsistency between arguing that our product is equivalent to their product. And the only difference, again, is this pharmaceutically acceptable fluid limitation. There's, I think, an inconsistency in saying, on the one hand, it's insubstantially different. And on the other hand, saying, as they say in the brief, that there are fundamental differences here that preclude application of the dedication disclosure argument. And I think they are really two sides of the same coin. And that was the mental gymnastics that I referred to. But, yeah, we have to deal with one issue at a time. Understood. If your side loses on the dedication disclosure doctrine argument, are you in trouble on doctrine of equivalence then? I don't think so. Well, how would you explain that? As to why one would not be equivalent to the other? Yeah. I think when you get... Just, you know, dedication disclosure ruling is completely contingent on the view that one reading this patent would believe, oh, these things are interchangeable. They're no big deal. That's what the patent... Well, your honor has a point. And it might not be a helpful fact, but I, truthfully, we've not, I don't think there's been any discussion. There's no discussion in the patent about how this, this, the pharmaceutically, how the pharmaceutically acceptable, it's a mouthful to say, I apologize, how the pharmaceutically acceptable fluids work or what role they play other than dissolving bendamustine. What the patent says is it may, but not necessarily, you know, be used to dissolve the bendamustine. As to what other functions, if any, there are, I don't at this moment know, but I agree with you that there, that it cuts two ways. So while I wouldn't concede at this point, that it would create problems for us, it would certainly be something that would have to be addressed. Thank you. Your time's up. Thank you. I have just a couple of things. I'd like to pick up quickly on one of the last things that Slabeck's counsel said, which is, there's no evidence in the specification supporting our contention that there are different mechanisms of action. The reason for that is we have no record. This specification is directed to a person of ordinary skill in the art, which is presumably pharmaceutical formulation, which deals with stabilizing complex pharmaceutical agents. And we put in a lot of, we put in a lot of factual evidence into this specification that shows certain things work, certain things didn't work. Another thing counsel said, which she said, which I don't believe there's support in the record for, that the function of ethanol in this is to dissolve the Bindamustine. This is not a patent about dissolving Bindamustine. The claims all require stable formulations. This was a problem that had plagued the art for a long time. Bindamustine's an old drug. It was always sold as a powder. This was the first liquid formulation that was able to come to the market. And so we solved the problem, and we laid out very carefully things that worked, things that didn't work, and we presented it to a skilled artisan. I'd like to focus on two particular things. Just the mere fact that one embodiment, one category of invention says stabilizing amount of a chloride salt. I doubt if anybody sitting at this table knows what the mechanism of degradation of Bindamustine is and how that affects it. The second, the center embodiment says stabilizing amount of an antioxidant. That, I guess, relates to oxidation. We don't have any testimony about that either. And so would a skilled artisan think those are the same thing? I can tell you they wouldn't, but we don't have a record to support that. I think that's the central basis for this court's NALCO decision, which is this is replete with factual issues. And on page 43 of our opening brief, I just wanted to point out, we lay out several Federal Circuit cases addressing dedication disclosure that were all dealing with much later stages of the case, not the 12C stage, which we would contend is inappropriate. And my final, two final things. On the issue of the amici declaration, our contention in submitting that to the district court was the court could deny the motion for 12C and let the case proceed into discovery in a normal course without considering expert evidence. But we should not lose and be denied our day in court. We haven't even had oral argument. We have had no proceedings attendant to us having a fair chance to prove our case here. Why don't you ask the court to take this into a summary judgment proceeding if you want factual evidence to be considered? I believe under the rule, under Rule 12, it's automatic. In other words, if we submit the factual evidence and we say you should deny the 12C motion, it doesn't need to be converted into a summary judgment motion to deny it. If the court thinks it's necessary, then the court needs to convert it to a summary judgment motion and needs to allow all parties to be appropriately heard for summary judgment purposes. But the one last thing I want to make sure I don't miss is we did ask in our briefing for leave to amend if the court, you know, if the court were inclined to believe that amendment was appropriate. So I want to make sure we don't... Leave to amend to do what? I don't understand that. If it's just a pleading issue to plead that the specification discloses certain facts that would not lead a skilled artisan to conclude that ethanol was disclosed as an alternative for the claimed formulation. But what the judge said is that even giving all fair inferences, looking at the patent itself, it was clear that there was disclosure. Correct. And we don't think the all fair... Given all fair inferences to our case and how a skilled artisan would read this patent that you could not conclude with the appropriate expert testimony in front of you that a skilled artisan reading column A would think one thing was at work and seeing a reference to a stabilizing amount of antioxidant would think a different thing was at work and would not know. Aren't you asking for another bite at the apple? We're asking for our first bite at the apple. This is really... This is why the 12C standard is so high. If there's any reasonable inferences that can go our way, we're entitled to have our due process rights of discovery of going through the normal district court proceedings. We want to present expert testimony. We think we can compellingly show not only that this is not disclosed as an alternative. We think we can show this is an insubstantial difference. They copied every last detail of our product, of our most detailed formulation. Council referenced the 90% PEG, a minor amount of PG. That's some of the narrowest claims that are at play here. And the issue is swapping out ethanol in that context versus PG, an insubstantial difference, when you don't have anything disclosed in here where you have a majority PEG, a minority PG, and any suggestion that ethanol is an alternative. We don't have to show there's a teaching away in our specification. We just have to show it's silent. Silence is enough under SanDisk. We don't have to show it wouldn't even be enabled under SanDisk. We just have to show for the claimed invention, with the stability limitations, with the ratios, with all of that detail, that it isn't actually disclosed as an alternative for that purpose. Thank you.